AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.  '23  MJ2412 |
| White iPhone Seizure No. 2023252000001601 – 0002 ("Target Device 2") | ) ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1960 | Unlicensed Money Transmission |

The application is based on these facts:

See affidavit incorporated by reference

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JASON JEREMIAH R POLK   Digitally signed by JASON JEREMIAH R POLK
Date: 2023.06.29 09:19:43 -07'00'

*Applicant's signature*

Jason Polk, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 06/29/2023 _____

*Judge's signature*

City and state:  San Diego, CA

Karen S.  Crawford, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT**

I, Special Agent Jason Polk, being duly sworn, hereby state as follows:

## I.     INTRODUCTION

1.     I submit this affidavit in support of an application for a warrant to search the following electronic devices:

Black iPhone

Seizure No. 2023252000001601 - 0001

("Target Device 1")

White iPhone

Seizure No. 2023252000001601 – 0002

("Target Device 2")

White iPhone

Seizure No. 2023252000001601 - 0003

("Target Device 3")

(Collectively "Target Devices")

as further described in Attachment A-1, A-2, A-3, and to seize evidence of crimes, specifically violations of Title 18, United States Code, Section 1960  as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Sophia GAO ("Defendant") for facilitating and engaging in the unlicensed transmission of money.  The Target Device is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

## II.    BACKGROUND

3.      I have been employed as a Special Agent with Homeland Security Investigations (HSI) since March 2008. I am currently assigned to the HSI Office of the Resident Agent in Charge, in Oceanside, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.      During my tenure with HSI, I have participated in investigations involving violations of Title 18 and Title 31 of the United States Code.  I have conducted and participated in investigations involving narcotics, fraud, human trafficking, bulk cash smuggling, and financial crimes. Through my training, experience, and conversations with other law enforcement officers experienced in financial crime investigations, I have gained an understanding of the operational habits of individuals who purposefully circumvent U.S. financial institutions to avoid detection or raise suspicion regarding large money transactions.

5.      I am aware that it is common practice for money launderers to work in concert utilizing cellular telephones.  A common tactic utilized by money launderers is to launder illicit proceeds through informal and/or unregistered money transmission businesses to avoid anti-money laundering compliance scrutiny by financial entities registered with the Financial Crimes Enforcement Network (FinCEN), a bureau within the Department of Treasury. I am aware that money launderers frequently communicate with individuals seeking to place, layer, and integrate illicitly obtained money into the U.S. financial system. These communications can occur before, during, and after illicitly obtained money is placed into the U.S. financial system.  For example, prior to the placement of illicitly obtained money into the U.S. financial system, money launderers frequently communicate with co-conspirators regarding arrangements and preparation for the financial transaction.

6.      Based upon my training, experience, and consultations with law enforcement officers experienced in money laundering and financial investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))  can and often do contain electronic evidence, including, for example, phone logs

and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in money laundering may yield evidence

    a. tending to indicate efforts to launder money within the United States or internationally;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, bank accounts, and phone numbers– used to facilitate the laundering of money within the United States or internationally;

    c. tending to identify co-conspirators, criminal associates, shell companies or others involved in money laundering;

    d. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    e. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### III.   STATEMENT OF PROBABLE CAUSE

**A.   <u>Background on Money Transmitting Businesses</u>**

7.    It is a violation of Title 18, United States Code, Section 1960 to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmission business (MTB). Title 18, United States Code, Section 1960(b)(1)(B) defines an unlicensed MTB to include "a money transmitting business which affects interstate or foreign commerce in any manner or degree and – … (B) fails to comply with the money transmitting business registration requirements under section 5330 of Title 31, United States Code, or regulations prescribed under such section."

8.    One such registration requirement is that MTBs register with the Financial Crimes Enforcement Network (FinCEN), a bureau within the U.S. Department of Treasury.

9.    Licensed money exchangers are also required by law to follow the Bank Secrecy Act (the "BSA," at Title 31, United States Code, Sections 5311 et seq.) and the BSA's implementing anti-money laundering ("AML") regulations, such as identifying persons involved in large currency transactions, performing customer due diligence, and filing Suspicious Activity Reports. Unlicensed money exchangers, MTBs, and money services businesses ("MSB") do not adhere to such laws and regulations.

10.    Based on my training and experience, some customers seek to avoid the AML scrutiny of depository banks, or other BSA-compliant financial institutions, like casinos and MTBs. Electronic or check transfers between bank accounts, or other transfers through an MSB/MTB that is registered with the United States government are transparent and subject to scrutiny. As required under the BSA, licensed MTBs are required by federal statutes and regulations to maintain an adequate AML program, which requires, among other policies and procedures, identifying and reporting persons conducting suspicious transactions.  Similarly, as a financial institution, an MTB must prepare and submit Currency Transaction Reports ("CTRs") (discussed in more detail below) to the Secretary of Treasury on certain cash transactions. An MSB/MTB, whether licensed or not, must adhere to such laws and regulations.

**B.    GAO is an Unlicensed Money Transmitter**

11.    I have access to a database portal maintained by FinCEN.  The FinCEN portal maintains, among other things, registration records for every federally-licensed MTB, as required under Title 31, United States Code, Section 5330.  On several occasions and specifically on June 26, 2023, I searched the FinCEN portal for records related to GAO. That search produced negative results for the registration of a federally-licensed MTB in GAO's name or associated with GAO.

12.    On June 27, 2023, GAO spoke on the telephone with an HSI Undercover Agent ("UCA 1").  During the conversation, GAO agreed to sell $200,000 of U.S. currency

to UCA 1 for a ten percent fee.  Specifically, the terms of the agreement called for GAO to transfer $200,000 in cash to UCA 1 and for UCA 1 to wire $220,000 to GAO's bank account in China upon receipt of the $200,000 in cash. During the conversation with UCA 1, GAO agreed to meet with UCA 1 on June 28, 2023 at The Noble Chef restaurant located at 6159 Balboa Ave, San Diego, CA.

13.    On June 28, 2023, , GAO arrived at 7320 Claremont Mesa Blvd and entered a vehicle with UCA 1.  Shortly thereafter, GAO and UCA 1 exited the car and walked to GAO's car where she let UCA 1 count bulk cash in the trunk of GAO's car.  At approximately 4:33 PM HSI special agents approached GAO in the parking lot of 7320 Claremont Mesa Blvd and identified themselves. GAO was in possession of approximately $200,000 in bulk US currency. GAO was placed under arrest at approximately 4:45 PM.

14.    The **Target Devices** were found inside of a fanny pack around GAO's waist. During the interview, GAO was shown Target Device 1, Target Device 2, and Target Device 3. GAO identified Target Device 1, Target Device 2, and Target Device 3 as belonging to her.

15.    Based upon my experience and training, consultation with other law enforcement officers experienced in money laundering investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of  Target Device 1, Target Device 2, and Target Device 3.  In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using Target Device 1, Target Device 2, and Target Device 3 to communicate with others to facilitate money laundering activity.  Further, in my training and experience, money launderers may be involved in the planning and coordination of money laundering events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of their money. Based on my training and experience, it is also not unusual for individuals, such as

Defendant, to attempt to minimize the amount of time they were involved in their money laundering activities, and for the individuals to be involved for weeks and months longer than they claim, including the time it takes to make money laundering arrangements. Accordingly, I request permission to search the Target Device for data beginning on May 28, 2023, up to and including June 28, 2023.

## IV.    METHODOLOGY

16.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17.    Following the issuance of this warrant, I will collect the Target Devices and subject it to analysis. All forensic analysis of the data contained within the telephone and

its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## V.     PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19.     Law enforcement agents hves not previously attempted to obtain the evidence sought by this warrant.

## VI.     CONCLUSION

20.     Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Devices will yield evidence of GAO's operation of an unlicensed money transmission business, in violation of Title 18, United States Code, Section 1960.

21.     Because the Target Devices were seized at the time of Defendant's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Devices. As stated above, I believe that the appropriate date range for this search is from May 28, 2023, through June 28, 2023.

20.     Accordingly, I request that the Court issues warrants authorizing law enforcement to search the item described in Attachments A-1, A-2, and A-3, and seize the items listed in Attachment B using the above-described methodology.

//
//
//
//
//
//

1   I swear the foregoing is true and correct to the best of my knowledge and belief.

2
                                            JASON JEREMIAH   Digitally signed by JASON
                                                             JEREMIAH R POLK
3                                           R POLK            Date: 2023.06.29 09:26:19 -07'00'
                                            _____
4                                            Special Agent Jason Polk
                                             Homeland Security Investigations
5
6   Sworn and attested to under oath by telephone, in accordance with Federal Rule of
    Criminal Procedure 4.1, this 29th day of June, 2023.
7

8

9   Honorable Karen S. Crawford
    United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTACHMENT A-2**

2

PROPERTY TO BE SEARCHED

3

The following property is to be searched:

4
5

    White i-Phone
    Seizure No. 2023252000001601-0002
    ("Target Device 2")

6

The Target Device is currently in the possession of Homeland Security Investigations,

7

located at 2420 West Vista Way Oceanside, CA 92054.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

Authorization to search the Target Device described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.  The seizure and search of the Target Device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 28, 2023, up to and including June 28, 2023:

    a.     tending to indicate efforts to operate an unlicensed money transmission business ("unlicensed MTB");

    b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers used to facilitate operation of an unlicensed MTB;

    c.     tending to identify co-conspirators, criminal associates, or others involved in the operation of an unlicensed MTB;

    d.     tending to identify the user of, or persons with control over or access to, the Target Device;

    e.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above; and/or

    f.     tending to identify the source of funds transmitted through an unlicensed money transmission business.

which are evidence of violations of Title 18, United States Code, Sections 1960.

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*